UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

TOMMY D. SHARP                                                                                    PLAINTIFFS

v.                                                          CIVIL ACTION NO. 3:11-CV-00688-CRS

AKER PLANT SERVICES GROUP, INC.                                                          DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on the following motions:

1) a motion for summary judgment filed by Defendant Aker Plant Services Group, Inc. ("Aker") (DN 25);

2) a motion by Plaintiff Tommy D. Sharp ("Sharp") to set aside our September 9, 2013, Order (DN 43) granting summary judgment in favor of Aker;

3) a motion by Aker for reconsideration (DN 48) of our September 9, 2013, Memorandum Opinion and Order (DNs 42, 43), granting Sharp's Motion to Amend Complaint (DN 34).

For the reasons set forth below, the Court will grant the motion to set aside as well as the motion for summary judgment. As explained below, this disposition will moot the motion for reconsideration.

## BACKGROUND

Unless otherwise indicated, the following facts are undisputed. Aker provides manufacturing companies with technology products as well as engineering, procurement, and construction management services. One of Aker's customers, E.I. DuPont deNemours and Company ("DuPont"), operates a plant in Louisville, Kentucky, where Aker maintains a team of employees. In 2003, Sharp was hired by Aker as a contract employee. In 2005, Sharp was hired

by Aker as a full-time Electrical and Instrumentation Designer working exclusively at the Louisville plant. In 2008 and 2009, Sharp and several other Aker employees were laid off due to a reduction in Aker's business. When Sharp's supervisor Michael Hudson ("Hudson") informed Sharp of his termination, Hudson allegedly mentioned that age was a motivating factor in the decision. This conversation prompted Sharp to bring an audio-recording device the following Monday to secretly record a second conversation with Hudson. During the conversation, Sharp successfully prompted Hudson to once again admit that age was a motivating factor in Aker's decision to terminate him.

After having obtained the recording, Sharp filed an action (the "wrongful discharge action") in Jefferson County Circuit Court alleging that Aker fired him based on his age in violation of the Kentucky Civil Rights Act ("KCRA"). On June 17, 2009, Aker removed the action on the basis diversity jurisdiction and shortly thereafter moved for summary judgment. On July 7, 2010, while the motion for summary judgment was still pending, Sharp applied for reemployment with Aker as an Electrical Designer through BRowland Technical Staffing ("BRowland"). Later that day, BRowland emailed Aker's Recruiting Consultant Jim Hobsetter ("Hobsetter") to inquire about Sharp's application. In turn, Hobsetter emailed Aker's Senior Manager of Human Resources Scott Atkins ("Atkins") asking whether Aker would be interested in hiring Sharp. On July 8, 2010, Atkins responded stating:

> Yes, we do know Tom. He does acceptable work as a designer, but he violated a DuPont mandate on the use of electronic recording devices on company property when last employed here. There are combustible materials in the plant that can potentially be ignited by the use of cell phones, recorders, cameras, etc... DuPont maintains a zero-tolerance approach to safety violations on its property so, unfortunately, we will not be able to consider Mr. Sharp for this role.

(Email, DN 25-1, at 15).

On April 22, 2011, Sharp filed an EEOC complaint alleging that Aker unlawfully retaliated against him by refusing to hire him because he had filed an age-discrimination action against them. When the Equal Employment Opportunity Commission ("EEOC") dismissed his complaint on September 19, 2011, Sharp filed the present action (the "retaliation action") on January 23, 2012, alleging retaliation in violation of the Age Discrimination in Employment Act ("ADEA"). On January 15, 2013, Aker filed a motion for summary judgment (DN 25), arguing that Sharp had failed to establish *prima facie* case of retaliation. Subsequently, Aker moved to supplement its motion for summary judgment (DN 32), arguing additionally that the action was not timely filed within 90 days of Sharp's receipt of his right-to-sue letter from the EEOC. Upon the filing of Aker's motion to supplement, Sharp moved to amend his complaint to assert a claim of retaliation under the Kentucky Civil Rights Act ("KCRA").

On September 9, 2013, we granted both the motion to amend complaint as well as the motion for summary judgment. In granting the motion to amend complaint, we held that "Aker will suffer no prejudice from Sharp's amendment" because "[t]he factual premise of the retaliation claim changes not a whit by the invocation of [the KCRA]." (Memorandum Opinion, DN 42, at 4). In granting the motion for summary judgment, we held that Sharp's action was time-barred because he had failed to file his ADEA claim within 90 days of receiving his right-to-sue letter from the EEOC. (Memorandum Opinion, DN 42, at 6).

On September 26, 2013, Sharp filed a motion to set aside (DN 47) the order granting Aker's Motion for Summary Judgment on the grounds that there was a mutual mistake regarding the date Sharp received his right-to-sue letter from the EEOC. In its response brief, Aker acknowledges the mistake and concedes that the order granting summary judgment should be set aside. Concurrently, however, Aker has moved for reconsideration (DN 48) of our order granting

Sharp's Motion to Amend Complaint. According to Aker, because that ruling was based on the Court's understanding that Sharp's federal claims would be dismissed, the Court should revisit the motion to amend complaint now that Sharp's federal claims have been revived.

Having considered the parties' briefs and being otherwise sufficiently advised, the Court will now address the motions submitted for decision.

## STANDARD

Before granting a motion for summary judgment, the Court must find that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the initial burden of establishing the nonexistence of any issue of material fact, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986), a burden which may only be satisfied by "citing to particular parts of materials in the record..." or "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). If the moving party satisfies this burden, the burden of production shifts to the non-moving party, who must then identify evidence demonstrating the existence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 322.

In resolving a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Thus, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If the non-

moving party fails to satisfy its burden of counterproduction, the court must grant the motion for summary judgment.

## DISCUSSION

The Court will begin by addressing Sharp's Motion to Set Aside our September 9, 2013, Order (DN 43) granting summary judgment in favor of Aker. In its response brief, Aker concedes that the order should be set aside because the basis of the ruling—that Sharp failed to file the action within 90 days of receiving his right-to-sue letter from the EEOC—is factually incorrect. (Resp. to Pl.'s Mot. to Set Aside, DN 51, at 1). Because it is undisputed that the order was based on an incorrect factual premise, the Court will grant the motion to set aside.

Having thus set aside our order, the Court will now revisit the motion for summary judgment (DN 25). Although Aker's motion only addresses Sharp's ADEA claim, our ADEA analysis is equally applicable to Sharp's KCRA claim because the applicable legal standard is identical. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 393–94 (6th Cir. 2008)). Accordingly, the Court will focus exclusively on whether summary judgment is warranted under the ADEA.

The ADEA prohibits an employer from failing or refusing to hire, discharging, or otherwise discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a)(1). A plaintiff may establish retaliation either by introducing direct evidence of retaliation or by proffering circumstantial evidence supporting an inference of retaliation. *See Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 544 (6th Cir. 2004). When a plaintiff relies solely on circumstantial evidence, the court must proceed under the *McDonnell-Douglas* burden-shifting framework. *Id.* Within this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of retaliation by proving that: 1) the plaintiff engaged in protected activity; 2)

the plaintiff's exercise of the protected activity was known by the defendant; 3) the defendant took an employment action adverse to the plaintiff; and 4) there was a causal connection between the protected activity and the adverse employment action. *Id.*

While conceding that Sharp has established the first three elements of his *prima facie* case, Aker argues that summary judgment is warranted because Sharp has failed to establish that there was a causal connection between his protected activity and Aker's refusal to hire him. According to Aker, the fifteen-month period between the date on which Sharp's attorney first sent Aker a demand letter (March 17, 2009) and the date on which Aker refused to hire Sharp for the new position (July 8, 2010) is far too long to establish a causal connection based on temporal proximity. Furthermore, Aker argues that Sharp has failed to identify any comparators sufficient to establish the existence of a causal connection.

In response, Sharp has advanced two arguments. First, Sharp argues that the fifteen-month period relied on by Aker is misleading insofar as critical events in the litigation occurred as late as May 11, 2010, only a matter of weeks before Aker refused to hire him on July 8, 2010. Because this raises the inference that "[t]his litigation was a foremost subject in [Aker's] mind" when it refused to rehire him, Sharp argues that temporal proximity should be measured from May 11, 2010, rather than March 17, 2009. Second, Sharp argues that, contrary to Aker's suggestion, he has identified numerous comparators which, coupled with the close temporal proximity, are sufficient to establish his *prima facie* case.

After careful review, the Court concludes that summary judgment is warranted because Sharp has failed to establish a *prima facie* case of retaliation under the ADEA. Perhaps most importantly, Sharp's argument that temporal proximity must be measured from May 11, 2010, is wholly without merit. In establishing the existence of a causal connection, temporal proximity is

important because the closer in time that an adverse employment action follows an employer's knowledge that an employee has engaged in protected activity, the more likely it is that the adverse employment action occurred because of the protected activity. Here, it is undisputed that Aker had knowledge of Sharp's intent to file an ADEA action against it as early as March 17, 2009, when Sharp's attorney sent Aker a demand letter. Thus, regardless of the fact that important events may have occurred around May 11, 2010, the relevant date for measuring temporal proximity remains March 17, 2009. Because the Sixth Circuit has consistently held that a causal connection is not established by temporal proximity exceeding six months, *see Parnell v. West*, 114 F.3d 1188 (6th Cir. 1997) (noting that "previous cases that have permitted a *prima facie* case to be made based on the proximity of time have all been short periods of time, usually less than six months."), Sharp's attempt to establish his *prima facie* case based on temporal proximity is unavailing.

Likewise unavailing is Sharp's attempt to establish his *prima facie* case by identifying comparators who, despite being similarly situated to Sharp, did not suffer an adverse employment action. According to Sharp, there were several Aker employees who regularly carried cellular phones with recording capabilities but who were not disciplined or fired pursuant to Aker's electrical-device policy. However, these "comparators" do not help establish Sharp's *prima facie* case because, unlike Sharp, none of them have filed an age discrimination claim against Aker. In *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796 (6th Cir. 1994), the Sixth Circuit held that, in order to establish a *prima facie* case of retaliation based on comparators, the plaintiff must "prove that all of the relevant aspects of his employment situation were 'nearly identical' to those of [the comparators'] employment situation." *Id.* at 802. Because the gravamen of Sharp's retaliation claim is that Aker refused to hire him because he had filed an

age-discrimination action against it, the fact that none of the other Aker employees identified by Sharp have filed an age- discrimination action against Aker is fatal to his attempt to establish his *prima facie* case based on comparators.

Having determined that Sharp cannot establish a *prima facie* case of retaliation under either the ADEA or the KCRA, the Court will grant the motion for summary judgment in full. Accordingly, Aker's Motion for Reconsideration will be denied as moot.

A separate order will be entered in accordance with this opinion.

**Charles R. Simpson III, Senior Judge**
**United States District Court**

March 14, 2014